[S. F. No. 1521.   Department One.—December 14, 1900.]

## GRIFFITH COIT et al., Appellants, v. WESTERN UNION TELEGRAPH COMPANY, Respondent.

Telegraphs—Mistake in Message—Care and Diligence—Construction of Finding.—In an action for damages caused by a mistake in a telegraphic message sent in reply to a message from the plaintiff, a finding that the telegraph company was not guilty of gross or any degree of negligence in the transmission and delivery of the message, or in the error or mistake therein, is to be construed as equivalent to an express finding that the company used great care and diligence in its transmission and delivery, in pursuance of section 2162 of the Civil Code.

Id.—Stipulation in Requested Message—Limitation of Liability—Unrepeated Message—Parties Bound by Contract.—A stipulation in the message transmitted to the plaintiffs in answer to their request therefor, limiting the liability of the telegraph company for mistakes or delays in transmission of an unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same, is valid and binding equally upon the sender and receiver of such message, in the absence of proof of willful misconduct or gross negligence of the telegraph company in the performance of its duty.

Id.—Agency of Sender for Receiver.—The sender of the message in response to a message from the plaintiffs was the agent for the plaintiffs in sending it, and the plaintiffs receiving the message are bound by the contract of the sender with the telegraph company as principal.

Id.—Privity of Contract—Cause of Action in Tort.—The addressee of a message, where there is no privity of contract, may rest his action upon tort for a breach of public duty by the telegraph company; but in a case where he is party to a special contract, either directly or indirectly through the sender as his agent, in an action against the company he must stand upon his contract rights.

Id.—Absence of Misconduct or Gross Negligence—Mistake Caused by Atmospheric Disturbance.—Where it appears that there was no willful misconduct, and that the mistake complained of was caused in an unrepeated message requested by the plaintiffs, by reason of atmospheric disturbance during a prevailing storm, causing the line to work badly, the line being otherwise in good working order, when the message was sent, a finding that there was no gross negligence in the sending of the message will not be disturbed for insufficiency of evidence.

CXXX. Cal.—42

ID.—Duty of Telegraph Company—Presence of Storm.—It was the duty of the telegraph company to forward the telegram at the earliest practicable moment; and the fact that a storm was prevailing over the route and that the action of the elements upon the wire could not be overcome by care and diligence, does not of itself convict the telegraph company of gross negligence in sending the message during such storm, and in not waiting for climatic changes for the better before sending it.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. W. T. Wallace, Judge.

The facts are stated in the opinion of the court.

Crittenden Thornton, and F. H. Merzbach, for Appellants.

The telegraph company was bound to use great care and diligence in the transmission and delivery of messages. (Civ. Code, sec. 2162; *Hart v. Western Union Tel. Co.*, 66 Cal. 579.[1]) An action will lie in favor of the receiver of a message for negligence or mistakes in transmission. (3 Sutherland on Damages, 314; Shearman and Redfield on Negligence, 560; *Western Union Tel. Co. v. Du Bois*, 128 Ill. 248[2]; *West v. Western Union Tel. Co.*, 39 Kan. 93[3]; *May v. Western Union Tel. Co.*, 112 Mass. 90; *Western Union Tel. Co. v. Allen*, 66 Miss. 549; *Milliken v. Western Union Tel. Co.*, 110 N. Y. 403; *Young v. Western Union Tel. Co.*, 107 N. C. 370[4]; *Wadsworth v. Western Union Tel. Co.*, 86 Tenn. 695[5]; *Western Union Tel. Co. v. Beringer*, 84 Tex. 38.) The addressee is not bound by conditions assented to by the sender. The liability of the company to the addressee arises from breach of its public duty. (*Western Union Tel. Co. v. Du Bois, supra; De La Grange v. Southwestern Tel. Co.*, 25 La. Ann. 383; *New York etc. Tel. Co. v. Dryburg*, 35 Pa. St. 298[6]; *Western Union Tel. Co. v. McKibben*, 114 Ind. 511.) The receiver of a message is under no obligation to have it repeated. (*Harris v. Western Union Tel. Co.*, 9 Phila. 88; *Tyler v. Western Union Tel. Co.*, 60 Ill. 421[7]; *De Rutte v. New York etc. Tel. Co.*, 30 How. Pr. 403; 1 Daly, 547.)

[1] 56 Am. Rep. 119.
[2] 15 Am. St. Rep. 109.
[3] 7 Am. St. Rep. 530.
[4] 22 Am. St. Rep. 883.
[5] 6 Am. St. Rep. 864.
[6] 78 Am. Dec. 338.
[7] 14 Am. Rep. 38.

The telegraph company was bound to delay transmission of the message during the storm. (*Pierce v. Southern Pac. Co.*, 120 Cal. 156; *Salisbury v. Herchenroder*, 106 Mass. 458.[8]) The act of God was not the sole cause of the mistake, unmixed with human agency or negligence of the defendant. (*Polack v. Pioche*, 35 Cal. 420[9]; *Forward v. Pittard*, 1 Term Rep. 27, per Lord Mansfield; *McArthur v. Sears*, 21 Wend. 190; *Ewart v. Street*, 2 Bail. 157[10]; *Fish v. Chapman*, 2 Ga. 349[11]; *Merrit v. Earle*, 29 N. Y. 115[12]; *Turner v. Tuolumne Water Co.*, 25 Cal. 403.)

George H. Fearons, and R. B. Carpenter, for Respondent.

The plaintiff who requested the sending of the message complained of must stand in the shoes of the sender, and is bound by the contract limiting the liability of the defendant. (*Ellis v. American Tel. Co.*, 95 Mass. 226, 238.) The company was bound to transmit the message promptly, or suffer a penalty for neglect. (U. S. Rev. Stats., sec. 5269.) The stipulation was valid and binding upon the parties. (*Hart v. Western Union Tel. Co.*, 66 Cal. 579[13]; *Redington v. Pacific Postal Tel. etc. Co.*, 107 Cal. 317[14]; *Primrose v. Western Union Tel. Co.*, 154 U. S. 1; *Smith v. New York Cent. Ry. Co.*, 24 N. Y. 222; *Riley v. Western Union Tel. Co.*, 109 N. Y. 231; *Grinnell v. Western Union Tel. Co.*, 113 Mass. 299[15]; *Clement v. Western Union Tel. Co.*, 137 Mass. 463; *Passmore v. Western Union Tel. Co.*, 78 Pa. St. 240; *United States Tel. Co. v. Gildersleve*, 29 Md. 232[16]; *Western Union Tel. Co. v. Carew*, 15 Mich. 525; *McAndrew v. Electric Tel. Co.*, 17 Com. B. 3.)

GAROUTTE, J.—Plaintiffs telegraphed to W. B. Dennis, at St. Louis, asking him to telegraph them the lowest cash price for two hundred and twenty tons of forty-pound steel rails. The message was correctly delivered, and in answer thereto Dennis telegraphed to plaintiffs the price to be thirty-seven dollars per ton. This dispatch was delivered in due time,

[8] 8 Am. Rep. 354.

[9] 95 Am. Dec. 115.

[10] 23 Am. Dec. 131.

[11] 46 Am. Dec. 393.

[12] 86 Am. Dec. 292.

[13] 56 Am. Rep. 119.

[14] 48 Am. St. Rep. 132.

[15] 18 Am. Rep. 485.

[16] 96 Am. Dec. 519.

but when delivered it read twenty-seven dollars per ton, the mistake in the message having occurred in transit by reason of atmospheric disturbances. Relying upon the words of the message as delivered, plaintiffs entered into contracts to buy and sell steel rails, and great damage resulted to them by reason of the mistake of defendant, heretofore stated. To recover this damage the present action was brought.

The facts of the case are largely agreed upon, and in addition, the court made a finding of fact as follows: "The defendant, Western Union Telegraph Company, was not guilty of gross or any other degree of negligence in the transmission of the message of Dennis to the plaintiffs, nor was the error or mistake in the said dispatch of said Dennis, as the same was delivered to said plaintiffs, due to or caused by the gross or any other degree of negligence of the said defendant, Western Union Telegraph Company." Upon the facts judgment was rendered for defendant, and this appeal from the judgment and order denying a motion for a new trial is now before us. This finding in favor of defendant of no negligence is essentially a finding of the ultimate fact in the case, and will be so treated by the court in the consideration of the merits of this appeal.

The Civil Code, section 2162, declares: "A carrier of messages for reward must use great care and diligence in the transmission and delivery of messages." In many jurisdictions it is held that the phrase "gross negligence" is a misnomer, and that the adjective "gross" in no way qualifies the noun "negligence." But in this state the rule is recognized to the contrary, not only by the decisions of this court, but by many sections of our Civil Code. The phrases "gross negligence" and "slight negligence" are found in common use in the law of this state, and, being so used, each must be held to have a distinctive meaning. The defendant in this case was required to use great care in the transmission and delivery of this message. The court found that in the transmission and delivery of the message defendant was not guilty of any negligence. Not being guilty of any negligence whatever, defendant must be held to have used great care; and the finding of fact quoted is the equivalent of an express finding that defendant used

great care in the performance of its duty in the transmission and delivery of the message here involved. But in view of the conclusion at which the court has arrived, it is unnecessary to determine whether or not the evidence in this case is sufficient to support a finding of fact to the effect that defendant was not guilty of any negligence whatever; and this conclusion is based upon the following reasons: The written message which was delivered by Dennis to defendant, to be sent to San Francisco and delivered to plaintiffs, contained the following regulation and stipulation bearing upon defendant's duties and liabilities: "It is agreed between the sender of this message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same." In this case the message sent from St. Louis to plaintiffs was not a "repeated message."

The foregoing stipulation constituted a valid and binding contract between Dennis, the sender, and the defendant company. As to its validity and binding force in this state, at least, the law may be considered settled. (*Hart v. Western Union Tel. Co.*, 66 Cal. 579[17]; *Redington v. Pacific Postal Tel. etc. Co.*, 107 Cal. 317[18]; *Primrose v. Western Union Tel. Co.*, 154 U. S. 1.) These authorities declare the rule of this state upon the question. It follows, therefore, that if Dennis, the sender of the message, was bringing this action against defendant for damages suffered by him, he would be bound by the agreement made, and could only recover in case defendant was guilty of willful misconduct or gross negligence in the performance of its duty. The interesting question then presents itself: Do these plaintiffs, the addressee and receiver of the message, stand in a better position, as against defendant's negligence, than does Dennis, the sender of the message?

In England it is held by the courts with entire unanimity that the addressee of a message has no right of action against the telegraph company for failure of performance of duty. And this conclusion is based upon the proposition that the relation between the parties is purely one of contract, and the

---

[17] 56 Am. Rep. 119.         [18] 48 Am. St. Rep. 132.

addressee is not a party thereto. In this country it may be deemed settled law that the addressee has a right of action against the telegraph company when by its negligence he has suffered damages. At the same time the different reasons given by the different courts in adopting this rule of law are many. We will not here enter into a discussion of the general principles governing litigation arising between individuals and telegraph companies in the matter of sending and receiving messages, but will confine ourselves to a consideration of the law bearing upon the facts of this particular case.

Plaintiffs telegraphed to Dennis, in St. Louis, requesting him to send by telegram the price of two hundred and twenty tons of steel rails. In pursuance of that request Dennis telegraphed the desired information. It is thus plain that Dennis performed service for plaintiffs at their request. And that being so, we deem the conclusion irresistible that in the performance of the service Dennis was acting for plaintiffs and was their agent. The fact that plaintiffs by a telegram requested him to perform this service is immaterial. They could have made the request with the same legal result either by letter or parol. If a party residing in St. Louis had been engaged for a consideration by plaintiffs to telegraph them the information here desired, and that party had done so, certainly such party would have been the agent of plaintiffs. Yet the fact, if it be a fact, that no consideration was paid by plaintiffs for the performance of the service by Dennis is not a material element in the consideration of the question of agency. Dennis, in sending the message, being the agent of plaintiffs, they were bound by the contract made with the defendant. Plaintiffs, by requesting him to send the message, necessarily authorized him to contract with defendant as to how that message should be sent. And this general authorization was sufficiently broad to include the agreement as to nonliability heretofore set out, and, therefore, the agreement was binding upon the principal, these plaintiffs.

In discussing this identical question, Thompson on the Law of Electricity, section 237, says: "In such a case, is the receiver of the message bound by the stipulation, assuming that the sender was bound by it? If the right of action which the

receiver has against the company rests upon privity of contract and depends upon the circumstances that the sender was his agent—in other words, if the contract with the telegraph company was the contract of the receiver through his agent, the sender—then, on the most unshaken ground, the receiver would be bound by this condition, if the circumstances were such that it would bind the sender." Now, in this state, by the authorities already cited, it is plain that Dennis was bound by the stipulation, and, having power to make it, his principal can only stand in his shoes. But it is said the action of the addressee of a message is founded upon tort, namely, a breach of public duty, and that therefore the question of contract does not enter into it. Yet, in a case like the one at bar, it may with equal legal propriety be said that a cause of action by Dennis against defendant would be founded on tort, namely, a breach of public duty, and thus eliminate any question of contract from the case. But this court has said that it cannot be done, and that Dennis must stand upon his contract as made. In cases where no question of privity of contract arises between the sender and the receiver of a message, the addressee may rest his right of action on tort; but where a party to a special contract, either directly or indirectly through the sender his agent, brings his action against the company, he must stand upon his contract rights.

We find many cases which support the conclusion at which we have arrived. The roads traveled by courts in arriving at this conclusion are many, yet those roads all lead to the same destination. In the leading case of *Ellis v. American Tel. Co.*, 95 Mass. 226, 238, no question of agency was adverted to in the opinion, yet the court said: "Besides, it is difficult to see how the plaintiff, who claims through a contract entered into by the sender of the message with the defendants, which created the duty and obligation resting in the defendants, can claim any higher or different degree of diligence than that which was stipulated for by the parties to the contract. Certainly, a derivative or incidental right cannot be greater or more extensive than that which attached to the principal or source whence such right accrued or was derived." In *Curtin v. Western Union Tel. Co.*, 38 N. Y. Supp. 58, 16 Misc. Rep. 348,

it is said: "The stipulation for exemption from liability ·contained in the printed blank of the company, upon which the sender writes his message, constitutes a contract which binds him and the person to whom the message is addressed, if the assent of the sender to such stipulation can be assumed." In *Aiken v. Western Union Tel. Co.*, 5 S. C. 371, it is held: "It is equally clear that any stipulation of an express nature intended to mold and limit his obligation must be construed as attaching to the obligation in its fullest extent and affecting equally all the persons related to it, either as sender, receiver, or agent of transmission. Under this view of the contract the plaintiff is entitled to enforce its performance as a direct party in interest." In *De Rutte v. New York etc. Tel. Co.*, 1 Daly, 556, 30 How. Pr. 403, we find this language: "When the defendants, therefore, undertook and were paid for sending the message, their contract was with the plaintiff, through his agent, and the action for a breach of it was properly brought by him." There is some authority opposed to the general tenor of the cases cited, as, for example, *New York etc. Tel. Co. v. Dryburg*, 35 Pa. St. 303,[19] and *De La Grange v. Southwestern Tel. Co.*, 25 La. Ann. 383. But no question of agency appears to have been involved in those cases, and it is upon the contract made by Dennis with the defendant and the privity of contract existing between Dennis and plaintiffs that we plant our conclusion upon this branch of the case.

In view of what has been said, the remaining question presents itself, Has defendant been guilty of willful misconduct or gross negligence? No question of willful misconduct is presented by the record, and the question then is, Does the evidence support the finding of fact that defendant was not guilty of gross negligence? Gross negligence is defined to be "the want of slight diligence." "Gross negligence is an entire failure to exercise care, or the exercise of so light a degree of care as to justify the belief that there was an indifference to the things and welfare of others." "Gross negligence is that entire want of care which would raise a presumption of the conscious indifference to consequences." (See *Redington v. Pa-*

[19] 78 Am. Dec. 338.

*cific Postal Tel. etc. Co., supra.*)    It is conceded that the mistake
in the message was occasioned by atmospheric disturbances,
and that "it is impossible to overcome the action of the ele-
ments upon the wire and repeaters with any kind of care and
diligence."

Plaintiff's counsel in his brief says: "In this case negligence
does not consist in the manner in which the act was attempted
to be done, but in the attempt to do the act at all."    The mis-
take in the message arose in transit between Denver and Los
Angeles.    And in view of the fact that the message had ar-
rived at Denver from St. Louis in due time and in proper form,
there is no showing of gross negligence up to this point.    Es-
pecially is this true in view of the further fact that when the
message arrived at Chicago from St. Louis in transit to San
Francisco, the only open line of communication to the point
of its destination was via Denver and Los Angeles.    It follows
that counsel's claim is, that in view of the general atmospheric
disturbances going on between Denver and Los Angeles de-
fendant should have held the message at Denver until climatic
changes for the better had taken place.

There can be no question but that it was the duty of defend-
ant to forward this message from Denver at the earliest prac-
ticable moment.    Our statute in terms demands it.    Now, this
message was received at Denver at 1:55 A. M., February 20th,
and a great storm was then prevailing at intervals of distance
and intervals of time between that point and Los Angeles.
During the night of the 19th-20th more than two hundred
messages were transmitted over the line in question from Den-
ver; the operator at Denver knew the line had been working
badly by reason of the storm, and at times it was impossible
to get a message through.    The line was working badly at the
time the message was received at Denver, and had been so
working off and on all night.    But at the time the message
was sent from Denver, about 5 A. M., the wire was in good
working order.    The two operators at Denver and Los Angeles
respectively engaged in sending and receiving the aforesaid
two hundred messages subsequently never heard of any com-
plaint as to the manner of their transmission.    Under the cir-
cumstances here depicted defendant was required to do either

one of two things, namely, hold the message at Denver for an unlimited time, or send it on its way. And, testing the facts in view of the meaning of the words "gross negligence" as the law defines them, this court cannot say that the finding made by the trial court to the effect that defendant was not guilty of gross negligence has no support in the evidence. The wire at the time the message was sent "was in good working order." The fact that a storm was rioting over the route should not of itself convict defendant of gross negligence in attempting to forward a message. If that be the law, then messages would not be sent for days at a time, or even weeks, during the winter season. The important question is, What is the condition of the wire? Is it in good working order? And is there a reasonable probability that the message as sent will arrive at its destination? Here the salient fact appears that the wire was in good working order when the message was sent. Taking the evidence altogether, the finding of the court that there was no gross negligence upon the part of the defendant will not be disturbed.

For the foregoing reasons the judgment and order are affirmed.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.